Good morning. May it please the Court, I'm Matthew Allinger, counsel for the appellant Richard Mason. The main point that I'd like to make is that the concept of a limiting instruction was crucial to the Supreme Court's holding in Richardson v. Marsh. That holding is expressly conditioned upon the giving of a limiting instruction. That is an instruction that the jury is to disregard a statement given by a co-defendant in considering another defendant's guilt. I mean, the whole point of the Richardson decision is that a jury can follow such an instruction when a co-defendant's confession is not facially incriminating. So that holding in the Richardson decision was expressly conditioned upon the giving of a limiting instruction. What was the statement that you're referring to that Fenton gave? The statement that I'm referring to is the obvious statement implicating Mr. Mason as a participant in the homicide. Now, I'll grant you that the statement came into evidence. Not directly. Not directly. I'll concede that. It either came into evidence or it didn't come into evidence. I'm having difficulty with the Confrontation Clause applicability. Perhaps you could explain to me what was the statement that you object to that you say violates the Confrontation Clause. The statement that I object to was not directly introduced into evidence. That's your argument, I take it, is that the introduction of the fact of a statement made by a co-participant is sufficient to establish a brutal violation. Is that right? Under the circumstances of this case. That's my argument, because everyone knew what the statement was. Everyone knew. Wait a minute. You just lost me. How did the jurors know what the statement said? Because of the circumstances of the case. It was clear that Alder Fenton had implicated Mr. Mason. And the reason for that is that the reason it was may have been inferentially clear is that your client made a statement to a third-party witness who was allowed to testify to it as an admission. This business about is the sheriff looking for me? Well, why would the sheriff be looking for you? Well, I shot this guy, and I think the guy I was with may have ratted on me or something like that, right? That's exactly right. But, Valerie — Is there any question about the admissibility of that statement? I — you mean Mr. Mason's statement, the evidence of his statement? Third-party. I don't believe so. I mean, it's an admission. So properly before the jury was your client's statement to a witness that he feared that law enforcement was looking for him because he had been involved in a shooting and the fellow that was with him may have talked to authorities. That's the substance of it, right? I think I've got to concede that. But then you have the prosecutor — Your argument is that the link of those two together, that series of statements I just described, linked to the fact that the jury heard that there — that in fact, the coparticipant gave a statement necessarily implicated your client, and therefore, there's a brutal violation. When it's considered with the other circumstances, which is that a warrant was issued for Mr. Mason's arrest after Mr. Fenton gave a statement based upon Valerie Cole's testimony, that warrant would have issued approximately a week after Mr. Fenton had given his statement and information. In an ordinary criminal case, if a law enforcement officer takes the stand and is asked, what did you do? Well, I interviewed witnesses A, B, and C. And what did you do next? Well, I assembled the information I had from those interviews, and then I talked with the assistant D.A., and then we asked for an arrest warrant, and I went out and arrested the defendant. That's pretty standard stuff, isn't it? Well, I'd agree with you there. But in this case, it was obvious from the get-go, that is, from the in limine discussion about this statement, what the prosecutor intended to do with it. And it was the defense counsel's objection that he's trying to use this to get in the implication, the clear implication, that Mr. Fenton had identified Mr. Mason as a participant in a homicide. And, I mean, you not only have a warrant being issued after the statement was made, a warrant for Mr. Mason's arrest, but you have information from that statement being given to Detective Johnson, who then contacted Ms. Cole and arranged for Mr. Mason's arrest. So, and then you have the prosecutor making a big deal out of the statement during the closing argument, and saying, how did Ms. Cole know that Mr. Mason was the shooter, essentially? And so it was made clear to everyone what the content of the statement was, or at least the most pertinent part, which was that Mr. Mason was involved in the homicide. So it was clear that Mr. Fenton had implicated Mr. Mason. And the question is whether it was reasonable for the California court of appeal to apply the Richardson exception to the Bruton rule under the circumstances of this case. And at what – cases, I think, out in other circuits that have adopted this argument, that the admission of the fact of a statement without its content can, under certain circumstances, constitute a Bruton violation. Are any of those habeas cases, or any of them post-EDPA? I don't know. I wish I could answer that. If the court would like me to brief that issue, I'd certainly be willing to look into it. Are you aware of any cases that, in the habeas context, post-EDPA, that deal with this particular issue? No. No, I'm not. I wish I were. But … Isn't the real problem here the Cole testimony? I mean, that seems to be much more powerful than the admission of the statement. Well, okay. And you don't object to that, so. I do need to address the issue of prejudice. And the problem that you've got is that the Cole testimony was known – basically known by the trial judge before it was decided to introduce this statement. And it was clear that the prosecutor was going to introduce the statement to not only buttress the credibility of Ms. Cole, but to establish that Mr. Fenton had actually implicated Mr. Mason. I mean, there was evidence that Mr. Mason had a motive to kill the victim. Evidently, he had told Ms. Cole that he had shot someone, aimed at their knees and hit them in the chest, and that he'd shot them because the person had raped his sister and his niece. So there was evidence of a motive. But Mr. Mason was not otherwise identifying – identified as being at the scene of the homicide. He'd been seen with Mr. Fenton two-and-a-half to three-and-a-half hours before the homicide occurred, and there was conflicting testimony as to the color of the getaway vehicle, with one witness testifying that it must have been a light-colored car, and another witness testifying that it was a dark-colored car, that it was black. And so the jury could not have determined from that testimony that it was Mr. Fenton's maroon BMW. And then you have evidence that the shooter was Hispanic, that his voice was that of a Mexican person, and that testimony was given by someone who evidently was Mexican. And that the pigmentation of the shooter's skin was that of a – of a Hispanic. And Mr. Mason, while he was suntanned, was not Mexican or Hispanic. But again, you've got – most importantly, you've got Mr. Mason's statement to Ms. Cole that he shot the person aiming at the knees but hit them in the chest, not that he shot them in the back. So I think it's clear that Elder Fenton's statement must have substantially influenced the jury in determining that Mr. Mason was the shooter and did participate in the homicide. It must have contributed to that decision. I don't hear now. You're down to about 30 seconds. Did you want to save a little time for rebuttal? I'd like to save a little time for rebuttal. But that's why I don't agree with you that Valerie Cole's statement was more incriminating than the evidence of Mr. Fenton's statement. Thanks. Okay. You've got half a minute or so. Counsel. May it please the Court. Justin Riley on behalf of the Warden. While Appellant argues that it's clear that Elder Fenton implicated Appellant, the evidence of Elder Fenton's statement was never used for that purpose. Rather, Appellant confessed, and it was a pretty clear confession to Valerie Cole. The only ambiguous part of that confession was who his victims were. Now, the prosecutor needed to tie the confession to the actual victims. As part of this evidence Does it matter for Bruton error purposes for what ostensible purpose the statement was introduced? Well, actually, I'm trying to show that this statement was offered for a proper purpose. It was properly admitted. We don't have a confrontation problem. Isn't that always the case in Bruton statements? We're putting in it for a different reason. And the test under Bruton, it seems to me, is not necessarily all the time. That is the case. This case is also distinguishable on many other grounds from Bruton. Bruton focuses on a facially incriminating and powerfully incriminating statement. Here there was no statement admitted into evidence. Right. I agree with you on that. But you started off by saying we admitted this evidence, and it was there was no doubt it incriminated the defendant. That's true, but not in a confrontation sort of way. It tied the defendant to the to Alder Fenton and placed him at the scene of the crime and and showed a guilty mind when he confessed to the to the murders to the murder to Valerie Cole. It wasn't. Okay. I ask a timing or sequential question. The law enforcement officer who offered the fact of the Fenton statement. Yes. Had he also interviewed Cole? I don't believe not at the time. At what time? At any time? Yeah, at any time. I don't know if he had done it at any time. At the time, Appellant confessed to Valerie Cole. He had not. When he proceeded to arrest the defendant, the Petitioner Mason, was he aware of the Cole statement? If you know. I don't. I'm trying to remember. I know Valerie Cole did speak to, she ended up calling the sheriff's office, I believe, a couple of times to see if there was a warrant out for Appellant's arrest. And I believe when she found out that there was a warrant, the final time she called, I believe someone called her back. And I can't say who. I think it was somebody different than the person who actually interviewed Appellant, but I can't say for sure. So we don't know if the Cole information was in the possession of law enforcement at or around the time that the Fenton statement was taken. Is that clear? I believe it was not. That is accurate. Okay. What other implication or inference could the jury draw from the admission of the fact that Fenton had made a statement other than that it implicated Mason? As I was saying, it ties Appellant to Alder Fenton in terms of time and place, and it identifies the victim. What happened was, is Appellant confessed to Valerie Cole, but he wasn't specific about his victim. He said, I shot a man in Stockton. The man molested my sister. And the person I was ---- And I think the guy I was with has squealed on me. And since Alder Fenton talked to the police, it was reasonable for Appellant to believe that he squealed on him. But it doesn't matter what the statement was. See, if we assume that the jury ---- Back in the old days, before past sexual conduct admission in rape cases was resolved in the way it is today, it's not uncommon for defense attorneys to try to put a witness on the stand to talk about the sexual proclivities of the victim. And when the judge would say, you can't do that, turn to the audience and ask five men sitting in the audience to leave. No testimony would come in. But the clear implication to the jury was that, if allowed, he would put five other men on the stand and talk about the sexual proclivities of the victim. And that was widely frowned upon. How is what happened here different than that? I mean, you don't put the statement in, but it is absolutely clear why you're offering the testimony and what implication the jury will take from it. If I understand your question correctly, I think that ---- In other words, can the circumstances be such that the offering of the fact of a statement by a co-participant is the same thing as going ahead and having him say, we did it? Because it doesn't matter whether or not the statement was true. It doesn't matter what Fenton said. It just doesn't. They could have ---- he and the police officer could have exchanged cooking recipes for seven hours, and the jury could have believed that, 100 percent. And this evidence still would have been extremely relevant to tie Appellant to the murders in terms of explaining who he was with and who his victims were. It doesn't matter what the statement was. It matters what Appellant thought Alder Fenton did. Because Alder Fenton made a statement to police, we now can connect Appellant and his accomplice, because Appellant admitted to the murder. If Fenton and Mason had been tried together, would Fenton's statement to law enforcement have been admissible in a joint trial? As against Fenton? Yes. And they would have had a ---- Would the content of Fenton's statement have been admissible in a joint trial? Under what? Without limiting instruction, without redaction? Without redaction, I don't know what the statement is. So if we assume that the statement would be ---- What if Mason to Stockton and I was with him when he shot this guy? No, that would not ---- it would violate Confrontation Clause principles. Here we also have a ---- Excuse me. Sorry. Go ahead. Do we have any place in the record where the actual statement is? Absolutely not. So all we know is that he was interrogated for seven or eight hours, whatever it was, and we don't know what was said? We don't know if it was recorded? That's true. That was calculated by the prosecution because of this very problem. Is it a problem, or does it make it worse? I mean, let's assume, taking your hypothetical, that they were just exchanging cooking recipes for seven hours. Yes. Well, if the jury had known that, they might have reached a different conclusion. What this evidence appears to have been put in for the purpose was to leave the impression that Fenton had implicated Mason, right? I don't agree with you, but if we start from the premise that it was in for a proper purpose. I know you've described this, but is your argument the proper purpose was that there was an identity of victims? That is the proper purpose. But how does that prove that, the way it's put in? It says, who did you interview? Fenton? When did you interview him? June? Did you arrest him? Yes. There was a time frame set up, and I believe I set it forth in my brief, that Fenton made a statement on, I believe, early in June. About a week later, Appellant made his confession to Valerie Cole. Now, the assumption that the prosecutor undoubtedly wanted the jury to make is, a week after Alder Fenton made his statement, Appellant thought his co-conspirator or co-defendant ratted him out. And a week after he made that statement, Appellant would be in a position to realize that his co-defendant had made a statement to police. Okay. Well, then, what is the relevance of the, after the seven-hour statement, you placed him under arrest? Yes. Except to implicate that, in fact, both defendants in this. I mean, if you say there's a statement and he was worried about it ratting it out, that's one thing. I don't know. It seems to me, it's taken the Cole testimony by itself, which came in really without objection, it's pretty powerful. This is, this, you say, is supposed to bolster the Cole testimony, but the clear implication is that Fenton did rat it out. And that's the, that the If we assume that the fact of the statement was in for a proper purpose, I think we're assuming right now, or we're fearing that the jury might have used this information for an improper purpose. That is the proper arena for a limiting instruction, which the Appellant did not request. The Constitution is loathe to place a sua sponte duty on the trial court to offer up an instruction that the defendant doesn't even request. And so if Appellant feared that he would, that the jury would use properly admitted evidence for an improper purpose, then it was his duty to request a limiting instruction. Let me ask one other question. Yes. At the time that the fact of the statement was being elicited from the police officer, was there an objection made? Not on confrontation grounds, no. On what grounds? Relevance and hearsay were the objections. Hearsay and what? Relevance. Thank you. Okay. Thank you for your argument. Rebuttal, you've got a few seconds. What's your best case that what happened here violated clear Federal standards? Clear Federal standards. Well, it's a case that I haven't ---- Clearly established Federal laws, that what happened here violated what was contrary to clearly established Federal law. I haven't cited the case, but it's cited in the magistrate judge's findings and recommendations, and I was ---- I believe was briefed in the California Court of Appeal, and that's the case I find most similar, I think, is Lilly v. Virginia. Okay. And, I mean, the statement could not have been considered in a joint trial without a limiting instruction. So I ---- and the content of the statement was made clear. There was no reason to introduce the evidence that Mr. Fenton had given a statement at all after his arrest, let alone a seven-hour statement, except to show the jury that he had implicated Mr. Mason, and the prosecutor urged the jury to use it for that purpose, and it must have contributed to the verdict. So with that, I'll submit it. Thank you, Justice Scalia. Thank you. The case disargued will be submitted for decision, and we'll proceed to the next case on the argument calendar, which is United States v. Areola.
judges: Wallace, Hawkins, Thomas